# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. __19-1261__

RONALD MACNEIL, _____ , PLAINTIFF(S),

v.

AM GENERAL LLC, _____ , DEFENDANT(S)



### SUMMONS

THIS SUMMONS IS DIRECTED TO __AM GENERAL LLC_____ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the ——Middlesex Superior—— Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
   opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, __Middlesex__ Court,
      __200 Trade Center__ (address), by mail or in person, **AND** (Woburn), MA 01801

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: ——Thornton Law Firm LLP, One Lincoln Street,—Boston, MA 02111

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
   **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov.courts/case-legal-res/rules of court.

*Tracking Order, Civil Action Cover Sheet, Complaint, Notice of Taking Deposition, 1st Set of Interrogatories,
and 1st Request for Production.

4.     **Legal Assistance.**  You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.     **Required information on all filings:**  The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ May   9 _____, 20 __19__.

_____
Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.


## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20 ___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____
_____
_____

Dated:_____, 20 ____        Signature: _____


N.B.     **TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

| |
|---|
| , 20___ |

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1981CV01261 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Ronald MacNeil vs. AM General LLC | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|

| TO: Andrew S Wainwright, Esq.<br>Thornton Law Firm LLP<br>100 Summer St<br>30th Floor<br>Boston, MA 02110 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 08/01/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 09/03/2019 | |
| All motions under MRCP 12, 19, and 20 | 08/31/2019 | 09/30/2019 | 10/30/2019 |
| All motions under MRCP 15 | 06/26/2020 | 07/27/2020 | 07/27/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/22/2021 | | |
| All motions under MRCP 56 | 05/24/2021 | 06/21/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 10/19/2021 |
| Case shall be resolved and judgment shall issue by | | | 05/02/2022 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 05/03/2019 | ASSISTANT CLERK | PHONE |
|---|---|---|

| **CIVIL ACTION COVER SHEET** | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: **MIDDLESEX** | Docket Number<br>19- **1261** |
|---|---|---|

| PLAINTIFF: RONALD MACNEIL, | DEFENDANT:  AM GENERAL LLC. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>(617) 720-1333<br>Andrew S. Wainwright, Esq.<br>THORNTON LAW FIRM LLP<br>One Lincoln Street, Boston, MA  02111<br>Board of Bar Overseers number: 560060 | ATTORNEY (if known): |

### Origin code and track designation

Place an x in one box only:
[ X ] 1. FO1 Original Complaint                              [ ] 4. F04 District Court Appeal c.231,s.97 & 104 After trial)   (X)
[ ] 2. FO2 Removal to Sup.Ct. C.231, s.104          [ ] 5. F05 Reactivated after rescript; relief from judgment/
    (Before trial)                              (F)               Order (Mass.R.Civ.P.60)                               (X)
[ ] 3. FO3 Retransfer to Sup.Ct.C.231,s.102C   (X)   [ ] 6. E10 Summary Process Appeal                               (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See Reverse Side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B19 | Asbestos | ( A ) | (X) Yes   ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
  1.  Total hospital expenses..................................................................................$..see attached..
  2.  Total Doctor expenses ...................................................................................$..see attached..
  3.  Total chiropractic expenses ...........................................................................$..see attached..
  4.  Total physical therapy expenses .....................................................................$..see attached..
  5.  Total other expenses (describe) ......................................................................$..see attached..
                                             **Subtotal $..see attached..**
B.  Documented lost wages and compensation to date.........................................................$..see attached..
C.  Documented property damages to date ......................................................................$..see attached..
D.  Reasonably anticipated future medical and hospital expenses .......................................$..see attached..
E.  Reasonably anticipated lost wages ...........................................................................$..see attached..
F.  Other documented items of damages (describe)
                                                   $..see attached..
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                 $..see attached..
                               **TOTAL $3,000,000.00**

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                              **TOTAL $...............**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

               Eastern Counties Massachusetts Asbestos Litigation Docket

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform  Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____DATE:  May 3, 2019
                  Andrew S. Wainwright, Esq.

A.O.S.C. 3-2007

**Plaintiff's Attachment to Civil Action Cover Sheet:**

**RONALD MACNEIL**

**DOCKET NO. 19- 1261**

The plaintiff, Ronald MacNeil, suffers from malignant mesothelioma and other asbestos-related disease. Although he has incurred substantial doctor, medical, hospital, clinic, therapy and rehabilitative expenses as a result of his treatment for his disease, the plaintiff has no documentation of these expenses at this time. However, the plaintiff expects that expenses relating to his asbestos-related diseases will exceed $700,000. The plaintiff has requested copies of his medical bills which should enable him to more accurately document the medical expenses. Future medical expenses are likely to exceed $800,000.

As a result of the tortious conduct of the defendants, the plaintiff, Ronald MacNeil, has been damaged to the extent that he will suffer a dramatic reduction in his life expectancy, experiences great mental and physical pain and suffering and suffers an impairment in his enjoyment of life, and lost earning capacity. The plaintiff estimates that these damages exceed $1,500,000.

As set forth in his complaint, the plaintiff is also entitled to compensatory damages.

The plaintiff estimates that the total damages exceed $3,000,000 in actual damages plus compensatory damages.

The plaintiff reserves the right to amend or supplement this statement.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

RONALD MACNEIL,

Plaintiff,

v.

AM GENERAL LLC,

Defendant.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

MAY _ 3 2019

_____
CLERK

Civil Action
No.: 19- **1261**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Now comes the plaintiff, by his attorneys, and files the following complaint:

1.   <u>PARTY PLAINTIFF</u>

The plaintiff, Ronald MacNeil, a single person, resides at 69 Washington Street,

Apartment 5C, Topsfield, MA 01983.

2.   <u>PARTY DEFENDANTS</u>

2A.  The defendant, <u>AM General LLC</u>, is a foreign corporation, incorporated under the

laws of the State of Delaware, having a principal place of business outside the Commonwealth of

Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

As used in this Complaint, the term "defendant" shall include any party defendants

identified in paragraph 2A hereof, and their predecessors, which shall include, but is not limited

to, any person, corporation, company or business entity:  which formed part of any combination,

consolidation, merger or reorganization from which any party defendant was created or was the

surviving corporation; whose assets, stock, property, products or product line was acquired by

any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was

acquired by any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3.    The plaintiff's cause of action arises from the defendants: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

4.    The plaintiff, Ronald MacNeil, was exposed to defendants' asbestos and asbestos-containing materials while serving as a mechanic in the National Guard from approximately 1983 to 1985.

5.    During the period of time set forth in Paragraph 4, the plaintiff, Ronald MacNeil, was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations.

6.    The asbestos and asbestos-containing products which the plaintiff, Ronald MacNeil, was exposed to were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

7.    At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products and/or equipment which included and/or specified asbestos and asbestos-containing products to be used thereon or therein.

8.     At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the plaintiff, Ronald MacNeil, without any substantial change in the condition of the product or products from the time that they were sold.

<u>COUNT I - NEGLIGENCE</u>

9.     The plaintiff realleges the allegations of Paragraphs 1 through 8 of the Complaint, and by reference, makes them part of this Count.

10.     It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging and sale of their asbestos and asbestos-containing products or equipment.

11.     It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos products and equipment and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products and equipment.

12.     It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products and equipment.

13.     Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant corporations breached their duties by:  (a) failing to warn the plaintiff, Ronald MacNeil, of the dangers, characteristics, and potentialities of their asbestos-containing product or products when the defendant corporations knew or should have known that exposure to their asbestos-

3

containing products would cause disease and injury; (b) failing to warn the plaintiff, Ronald

MacNeil, of the dangers to which he was exposed when they knew or should have known of the

dangers; (c) failing to exercise reasonable care to warn the plaintiff, Ronald MacNeil, of what

would be safe, sufficient, and proper protective clothing, equipment, and appliances when

working with or near or being exposed to their asbestos and asbestos-containing products; (d)

failing to provide safe, sufficient and proper protective clothing, equipment and appliances with

their asbestos-containing product or products; (e) failing to test their asbestos and asbestos

products in order to ascertain the extent of dangers involved upon exposure thereto; (f) failing to

conduct such research as should have been conducted in the exercise of reasonable care, in order

to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing

products; (g) failing to remove the product or products from the market when the defendant

corporations knew or should have known of the hazards of exposure to their asbestos and

asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and

potentialities of exposure to asbestos to adequately warn and apprise the plaintiff, Ronald

MacNeil, of the dangers, hazards, and potentialities discovered; (i) failing upon discovery of the

dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and

asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; (j)

failing to provide an adequate warning to those who would foreseeably come into contact with

asbestos and asbestos-containing material which was specified, recommended, required or

necessarily used in the installation and/or continued maintenance of the defendant's equipment,

and, (k) generally using unreasonable, careless, and negligent conduct in the manufacture,

fabricating, supply, or sale of their asbestos and asbestos-containing products.

14.     As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, the plaintiff, Ronald MacNeil, has developed malignant mesothelioma and other asbestos-related disease, as a result of which the plaintiff, Ronald MacNeil, has incurred medical expenses, suffered a dramatic reduction in his life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in his enjoyment of life, which damages are continuing in nature.

15.     The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, the plaintiff, Ronald MacNeil, demands compensatory damages, plus interest and costs.

## COUNT II - BREACH OF EXPRESSED AND IMPLIED WARRANTIES

16.     The plaintiff reallege the allegations of Paragraphs 1 through 15 of the Complaint, and by reference, makes them part of this Count.

17.     The plaintiff, Ronald MacNeil, was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products or equipment within the meaning of Massachusetts General Laws c. 106, §2-318, as the defendants knew or had reason to know that their asbestos-containing products would be used in the insulation or construction industry and that individuals such as the plaintiff, Ronald MacNeil, would come in contact with such asbestos materials.

18.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products and equipment described above were merchantable, safe, and fit for their ordinary purposes and the particular purposes and requirements of the plaintiff, Ronald MacNeil.

19.    The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products and equipment would be used.

20.    The plaintiff, Ronald MacNeil, relied upon the defendants' skill or judgment in selecting suitable mechanical material, insulation or construction products for safe use.

21.    The defendants breached these warranties, in that the asbestos-containing products and equipment they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

22.    As a direct and proximate result of the defendants' breach of warranties, the plaintiff, Ronald MacNeil, has developed malignant mesothelioma and other asbestos-related disease, as a result of which the plaintiff, Ronald MacNeil, has incurred medical expenses, suffered a dramatic reduction in his life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in his enjoyment of life, which damages are continuing in nature.

WHEREFORE, the plaintiff, Ronald MacNeil, demands compensatory damages, plus interest and costs.

The plaintiff demands a trial by jury on all issues.

DATED: May 3, 2019                        Respectfully submitted,

Andrew S. Wainwright, Esq.
(BBO# 560060)
**THORNTON LAW FIRM LLP**
One Lincoln Street
Boston, MA 02111
(617) 720-1333   FAX (617)720-2445
awainwright@tenlaw.com

6

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

RONALD MACNEIL,

                    Plaintiff,

v.

AM GENERAL LLC,

                    Defendant.

Civil Action
No.: 19-1261

## NOTICE OF TAKING DEPOSITION UNDER M.R.C.P. 30(b)(6)

TO:    **AM GENERAL LLC**
c/o The Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

PLEASE TAKE NOTICE that on **July 5, 2019** at **10:00 a.m.** at the offices of **Thornton Law Firm LLP, One Lincoln Street, 25th Floor, Boston, MA 02111**, the plaintiff in the above action, by his attorney, will take the deposition of **AM GENERAL LLC** by a person or persons to be designated pursuant to Massachusetts Rules of Civil Procedure 30(b)(6) as having the most knowledge concerning the matters listed in the paragraphs below.

1. The sale, supply, an/or delivery of any asbestos containing equipment and/or products including, but not limited to, vehicles, jeeps, trucks heavy equipment, brake shoes, brake lining, brake pads, clutch facing, gaskets, friction material or other asbestos-containing products or equipment to:

   a. The United States Army
   b. The Army National Guard of the United States
   c. The Massachusetts Army National Guard

2. Any technical manuals, maintenance manuals, characteristic sheets, specifications or other publications created, published, provided or submitted to the U.S. Armed Forces for any of the equipment or products identified above.

3. Warnings or cautionary language on the containers/packages of your asbestos products, or any written material submitted with or regarding any equipment or products that were distributed within the United States.

4. Identity of each business entity from whom you have received finished asbestos

products.

5. The design, safe and effective operation, and safe and effective maintenance of the brake systems and clutch systems of any equipment sold or supplied to those entities from 1960 to 1985.

6. Prohibition or limitations by the United States government or any branch of the military on your ability to place a warning or caution on any product, equipment, Technical Manual, or any other written material concerning the potential hazards associated with exposure to asbestos.

7. Agreements with any company, person, or business entity either as a buyer or as a seller, to rebrand any ASBESTOS-CONTAINING EQUIPMENT, PRODUCTS and/or materials.

8. Testing or studies of any asbestos products that you manufactured, produced, processed, sold, merchandized, supplied, distributed or otherwise placed in the stream of commerce to determine the amount of asbestos fibers released during repair and/or installation.

9. All studies of which YOU are aware concerning the effects of the inhalation of asbestos dust and/or fibers on persons who apply, remove, use, and/or work with or around any of the ASBESTOS-CONTAINING PRODUCTS designed, manufactured, sold, distributed, maintained, licensed, and/or relabeled for distribution by YOU, YOUR predecessors, subsidiaries, or affiliates.

10. Any studies to determine whether, and to what degree, the ASBESTOS-CONTAINING PRODUCTS that YOU, mined, manufactured, sold, marketed, installed, or distributed would be HAZARDOUS to humans before YOU placed such ASBESTOS-CONTAINING PRODUCTS into the steam of commerce or sold or supplied such products to the U.S. military.

11. Each scientific and/or medical periodical or journal to which YOU, YOUR consulting physicians, and/or YOUR MEDICAL, research, industrial hygiene, product development, engineering and SAFETY DEPARTMENTS subscribed between 1930 and 1985.

12. All inter-company, industrial, labor, or professional organizations or groups to which YOU or any of YOUR managers, officers, and/or directors belong, or have belonged, at any time since 1930, including, but not be limited to, memberships in the Friction Materials Standards Institute; Brake Linings Manufacturing Association; Quebec Asbestos Mining Association; Asbestos Information Association; Industrial Health Foundation; Industrial Hygiene Foundation; Iron and Steel Institute; National Safety Council; Refractories Institute; American Society of Mechanical Engineers; Air Hygiene Foundation; and American Ceramics Society.

13. Health hazards or problems associated with the use of ASBESTOS or ASBESTOS-

CONTAINING PRODUCTS.

14. Any workmen's compensation claim for asbestosis, pulmonary fibrosis, mesothelioma or any other occupational disease or death caused by exposure to asbestos to any of your employees who were occupationally exposed to asbestos products by their using, handling, fabricating, installing, removing, mixing, cutting, packing or transporting products containing any percentage whatsoever of asbestos, whether manufactured by you or made by some other company.

15. Any rules, written or oral, for the handling of asbestos products by your own employees.

16. Any knowledge of, or the purpose for which your asbestos friction materials were ground, beveled, shaped, sanded or otherwise subjected to manipulation that removed or released material from their surface by foreseeable end users of your products.

17. Asbestos-containing dust produced by the contact of asbestos friction materials against either brake drums or flywheels

18. All facts and documents upon which YOUR affirmative defenses are based.

19. The identity of all witnesses you intend to call at trial.

20. The current state of all corporate and/or business records that relate to asbestos.

21. The identity of all PERSONS known to YOU to have knowledge of facts concerning Plaintiff Ronald MacNeil's alleged exposure to ASBESTOS-CONTAINING PRODUCTS manufactured, supplied, sold, provided, marketed, installed and/or distributed by YOU.

Please note that the individual(s) designated by AM GENERAL LLC to attend said deposition is/are requested to bring any records or documents relevant to this notice and responsive to plaintiff's request for production of documents.

The oral examination will continue from day to day until completed. You are invited to attend and cross-examine.

As used in this notice, the term "this defendant", "AM GENERAL LLC", and "AM GENERAL" shall include its predecessors, successors, affiliated companies, divisions and sub-divisions, which shall include, but are not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which it was created or was the surviving corporation, whose assets, stock, property, products or product line was acquired by it.

Dated: May 9, 2019

3

Respectfully submitted,
By plaintiff's attorneys,


Andrew S. Wainwright, Esq.
BBO #: 560060
THORNTON LAW FIRM, LLP
One Lincoln St., 25th Floor
Boston, MA  02111
(617) 720-1333  FAX (617) 720-2445
awainwright@tenlaw.com

## CERTIFICATE OF SERVICE

I, Andrew S. Wainwright, Esq., hereby certify that on this day I electronically served, via

File & Serve, the foregoing **NOTICE OF TAKING DEPOSITION UNDER M.R.C.P.**

**30(b)(6)**, on all defendants' counsel of record in the above-captioned matter.

DATED:  May 9, 2019

Andrew S. Wainwright, Esq.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

---

RONALD MACNEIL,

                Plaintiff,

v.

AM GENERAL LLC,

                Defendant.

Civil Action
No.: 19-1261

---

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, AM GENERAL LLC

Plaintiff, Ronald MacNeil, by and through his counsel, hereby request the production of documents by defendant, AM General LLC, as provided in Rule 34 of the Massachusetts Rules of Civil Procedures.

## I. INSTRUCTIONS

1.    A request to produce documents includes all documents in your physical possession or available to you and all documents in the possession of or available to your attorneys, agents, representatives, and subsidiary and affiliated companies. If you do not have documents responsive to plaintiff's request to produce, you are under a duty to make diligent efforts to obtain such documents.

2.    If any document called for herein was, but is no longer, in your possession or custody, or subject to your control, your response hereto shall state what disposition was made of such document and identify its present custodian.

3.    If you refuse to produce any document in whole or in part demanded herein, your response hereto shall identify each document withheld by stating:

    a.    the type of document, its date, title or heading, and subject matter;

    b.    all addressors and addressees and any indicated or blind copy;

    c.    all persons to whom the document was distributed, shown, made available or explained;

    d.    its present location; and

    e.      the basis for the refusal to produce, including any claim of privilege, in sufficient detail so as to permit plaintiff to evaluate the validity of each refusal.

4.      The document requests made herein are continuing in nature so as to require supplementary production of documents if you obtain, generate, or have access to documents, information with respect to documents, or other information falling within the scope of Plaintiff's Request for Production of Documents after your response hereto. Said supplementary document productions are to be made as soon as any new or additional documents are acquired.

## II. DEFINITIONS

As used in these Interrogatories the following terms mean:

1.      The terms "Defendant," "AM General," "you," "your," and "your company" all mean the corporate Defendant answering these Interrogatories, and any of its merged, consolidated, or acquired predecessors, divisions, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, and/or affiliates. This definition includes present and former officers, directors, agents, employees, and all other persons acting or purporting to act on behalf of the corporate Defendant or its predecessors, subsidiaries, and affiliates. "Predecessors" further means any business firm, whether or not incorporated, which had all or some of its assets purchased by you or came to be acquired by you whether by merger or consolidation. "Subsidiaries" further means any business firm, whether or not incorporated, which is or was in any way owned or controlled, in whole or in part by Defendant or its predecessors.

2.      The terms "document" or "documents" include any written, printed, recorded or graphic matter, photographic or video graphic matter or sound reproductions or computer input or output, including but not limited to: contracts, notes, rough drafts, interoffice memoranda, reports, research materials, logs, diaries, calendars, bank statements, tax invoices, diagrams, studies, manuals, minutes, by-laws, articles of incorporation, resolutions, shareholder endorsements, or partnership documents however produced or reproduced, that are: (i) now or were formerly in the possession, custody, or control of the Defendant (including documents at any time in the possession, custody or control of their subsidiaries, whether domestic or AM General, or merged or acquired predecessors) or, (ii) known or are believed to be responsive to these Interrogatories regardless of who now has or formerly had custody, possession or control.

3.      The words "person," "persons," individual," or "individuals" include natural persons, firms, partnerships, associations, joint ventures, corporations, and any other form of business organization or arrangement, and officers, directors, shareholders, employees, agents, and contractors of any business organization or arrangement.

4.      The words "meeting" or "meetings" may mean any coincidence or presence of any persons, whether or not such coincidence or presence was prearranged, was formal or informal, or was in connection with some other activity.

5.     The words "describe" or "description" when referring to a place, thing, or occurrence, mean to identify with sufficient particularity the place, thing, or occurrence so as to enable one to locate, examine and fully comprehend or understand the place, thing, or occurrence described.

6.     The terms "asbestos-containing products" and "asbestos products" mean any product, truck, vehicle, equipment, machinery, or mechanical item which contains or specifies the use of any asbestos-containing material in any form.  Such products and "equipment" include, but are not limited to, vehicles, brake shoes, brake lining, brake pads, brake assemblies, clutches, clutch facings, clutch assemblies, automotive friction material, and insulation materials.  The terms "asbestos," "asbestos materials" and "asbestos fiber(s)" refer to any and all materials, substance, or matter used or assembled or fabricated during the manufacture of a product, and that contains at least some asbestos fibers, including chrysotile, amosite, crocidolite, tremolite, actinolite, anthopholite, as an intended ingredient or contaminant.  "Product" and "equipment" include, but are not limited to, motorcycles, vehicles, jeeps, trucks, heavy equipment, brake linings, brake pads, clutch discs, brake and clutch linings, any replacement parts such as brake lining, brakes pads or clutch discs, and insulation materials.

7.     The terms "trade organization," and "trade association" mean any organizations or associations of business or industrial entities that are associated and/or meets for the purpose of achieving common goals and/or exchanging information related to common needs or interests, and/or learning information or facts of interest to the various members of the organization or association.

8.     The terms "facility" and "facilities" means a manufacturing or assembly facility where products are refined, converted, chemically altered, changed, assembled, manufactured, constructed, fabricated, or where component parts, materials, substances, or matter of such products are fabricated, assembled, or manufactured or are prepared for further fabrication or assembly.

9.     The term "equipment" refers vehicles, trucks, jeeps, heavy equipment, and/or any machinery or piece of equipment that calls for the use of asbestos and/or asbestos-containing products.  This definition specifically includes, but is not limited to the M151 jeep, M34 and M35 2 ½ ton truck, and the M54,  M809 and M939 5 ton truck.

10.    The terms "manufacture" or "manufactured" mean to fabricate, construct, assemble, prepare for fabrication or assembly, or take any other action before completion of the product or material before the time of its shipment.

11.    The terms "research" and "research department" refer to efforts, whether scientific or otherwise, to develop new or different types of products, processes or designs of pre-existing products and is meant to incorporate all efforts that specifically contemplated the possible alteration of products.

12. The terms "medical department" and "safety department" refer to an individual or a section or group of individuals working for the defendant, either directly or in a contractual capacity, whose purpose was or is to provide guidance, assistance, or advice concerning any aspects of medical health, including but not limited to, the safety of the defendant's workers and the safety of individuals using or exposed to asbestos products.

13. The phrase, "industrial hygiene department" reefers to an individual or group of individuals working for the defendant, either directly or indirectly, or in a contractual capacity, whose purpose was or is to provide guidance regarding the results of surveys, tests, interviews, or other procedures taken or effectuated for the purpose of determining the possibility or existence of detrimental health effects caused by exposure to asbestos.

14. The term "health hazards" refers and relates to any injury, effect, damage, scarring, wound, impairment or disability of any part of the  human anatomy, including but not limited to the lungs and lung linings, that is caused by or associated with exposures to asbestos dust and fibers.

15. The terms "test" and "testing" are used in their broadest sense including, but not limited to, studies of atmospheric dust samples, studies of the concentration of asbestos in such airborne test samples, studies of the lung conditions of workers (by x-ray or other means of medical surveillance), pulmonary function studies of workers, animal studies, pathological studies, industrial hygiene studies, risk assessment studies, cost-benefit analyses, and any other studies concerning health and safety.

16. The term "identify," with respect to a document, means state the name or title of the document, the date of the document, the author of the document, the date the document was received by defendant and the current custodian of the document.

17. The term "identify," with respect to a person, means state the person's full name, title, last known address, and phone number.

18. The words "sales materials" or "written sales materials" mean any and all documents or literature of a promotional nature that were created or printed for the purpose of assisting in the marketing or distribution of the products.  Such documentation may include, but is not limited to, sales invoices, order slips, and other written indicia of orders received and sales made.

19. The term "rebranding agreement" means an agreement of any kind whereby one party to the agreement is provided products by the other party to the agreement and the agreement contemplates that the first party will place the brand name of its choice upon the products, either by repackaging or otherwise, and then proceed to sell, market, distribute and/or place the product in the stream of commerce, utilizing its new brand name.

## III. REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All correspondence, invoices, specifications, memoranda and/or other documents concerning the sale, supply, installation, or delivery of any asbestos containing equipment and/or products including, but not limited to, vehicles, jeeps, trucks heavy equipment, brake shoes, brake lining, brake pads, clutch facing, gaskets, friction material or other asbestos-containing products or equipment to:

a) The United States Army
b) The Army National Guard of the United States
c) The Massachusetts Army National Guard

**REQUEST FOR PRODUCTION NO. 2:**

Any written material, specifications, diagrams or requirements for any technical manuals, maintenance manuals, characteristic sheets, specifications or other publications created, published, provided or submitted to the U.S. Armed Forces for any of the equipment or products identified above.

**REQUEST FOR PRODUCTION NO. 3:**

Any documents, correspondence, exemplars pertaining to any warnings or cautionary language on the containers/packages of your asbestos products, or any written material submitted with or regarding any equipment or products that were distributed within the United States.

**REQUEST FOR PRODUCTION NO. 4:**

All correspondence, invoices, specifications, lists, memoranda and/or other documents identifying each business entity from whom you have received finished asbestos products.

**REQUEST FOR PRODUCTION NO. 5:**

All correspondence, invoices, memoranda and/or other documents regarding communication with the United States government, the U.S. Army, the Army National Guard of the United States, and/or the Massachusetts National Guard concerning the design, safe and effective operation, and safe and effective maintenance of the brake systems and clutch systems of any equipment sold or supplied to those entities from 1960 to 1985.

**REQUEST FOR PRODUCTION NO. 6:**

All correspondence, memoranda and/or other documents from the United States government or any branch of the military regarding communication prohibiting YOU from placing a warning or caution on any product, equipment, Technical Manual, or any other written material concerning the potential hazards associated with exposure to asbestos.

**REQUEST FOR PRODUCTION NO. 7:**

Any contracts, correspondence, invoices, memoranda, and/or other documents demonstrating any agreement into which YOU have entered with any company, PERSON, or business entity, either as a buyer or as a seller, to rebrand any ASBESTOS-CONTAINING EQUIPMENT, PRODUCTS and/or materials.

**REQUEST FOR PRODUCTION NO. 8:**

Any documents pertaining to any tests or studies performed by YOU, any co-defendant to this action, any governmental agency or any independent organization on any asbestos products that you manufactured, produced, processed, sold, merchandized, supplied, distributed or otherwise placed in the stream of commerce to determine the amount of asbestos fibers released during repair and/or installation.

**REQUEST FOR PRODUCTION NO. 9:**

All studies of which YOU are aware concerning the effects of the inhalation of asbestos dust and/or fibers on persons who apply, remove, use, and/or work with or around any of the ASBESTOS-CONTAINING PRODUCTS designed, manufactured, sold, distributed, maintained, licensed, and/or relabeled for distribution by YOU, YOUR predecessors, subsidiaries, or affiliates.

**REQUEST FOR PRODUCTION NO. 10:**

All correspondence, memoranda and/or other documents regarding communication with any person, including but limited to any agency of the United States government and any branch of the military, to whom the study summaries and reports identified in YOUR Response to Request No. 9 above were given.

**REQUEST FOR PRODUCTION NO. 11:**

Any studies to determine whether, and to what degree, the ASBESTOS-CONTAINING PRODUCTS that YOU, mined, manufactured, sold, marketed, installed, or distributed would be HAZARDOUS to humans before YOU placed such ASBESTOS-CONTAINING PRODUCTS into the steam of commerce or sold or supplied such products to the U.S. military.

**REQUEST FOR PRODUCTION NO. 12:**

Any DOCUMENT in YOUR possession, custody, or control or about which YOU have knowledge that relates, refers, speculates, postulates, or pertains in any way to health hazards or problems associated with the use of ASBESTOS or ASBESTOS-CONTAINING PRODUCTS.

**REQUEST FOR PRODUCTION NO. 13:**

Any documents related to any workmen's compensation claim for asbestosis, pulmonary fibrosis, mesothelioma or any other occupational disease or death caused by exposure to asbestos to any of your employees who were occupationally exposed to asbestos products by their using, handling, fabricating, installing, removing, mixing, cutting, packing or transporting products containing any percentage whatsoever of asbestos, whether manufactured by you or made by some other company.

**REQUEST FOR PRODUCTION NO. 14:**

All correspondence, memoranda and/or other documents regarding any rules, written or oral, promulgated by YOU for the handling of asbestos products by your own employees.

**REQUEST FOR PRODUCTION NO. 15:**

Any DOCUMENT in YOUR possession, custody, or control or about which YOU have knowledge that relates, refers, speculates, postulates, or pertains in any way to your knowledge that your asbestos friction materials were ground, beveled, shaped, sanded or otherwise subjected to manipulation that removed or released material from their surface by foreseeable end users of your products.

**REQUEST FOR PRODUCTION NO. 16:**

Any DOCUMENT in YOUR possession, custody, or control or about which YOU have knowledge that relates, refers, speculates, postulates, or pertains in any way to your contention that the contact of asbestos friction materials against either brake drums or flywheels does not produce any asbestos-containing dust.

**REQUEST FOR PRODUCTION NO. 17:**

Any document providing facts upon which you base each affirmative defense asserted in YOUR Answer to Plaintiff's Complaint.

**REQUEST FOR PRODUCTION NO. 18:**

All transcripts, recordings, and memoranda of, and corresponding exhibits to, any prior testimony of each witness YOU intend to call at trial.

**REQUEST FOR PRODUCTION NO. 19:**

All documents related to your document retention policy.

**REQUEST FOR PRODUCTION NO. 20:**

Any documents identifying all PERSONS known to YOU to have knowledge of facts concerning Plaintiff Ronald MacNeil's alleged exposure to ASBESTOS-CONTAINING PRODUCTS manufactured, supplied, sold, provided, marketed, installed and/or distributed by YOU.

Dated: May 9, 2019

Respectfully submitted,
By plaintiff's attorneys,

Andrew S. Wainwright, Esq.
BBO #: 560060
THORNTON LAW FIRM, LLP
One Lincoln St., 25th Floor
Boston, MA  02111
(617) 720-1333   FAX (617) 720-2445
awainwright@tenlaw.com

## CERTIFICATE OF SERVICE

I, Andrew S. Wainwright, Esq., hereby certify that on this day I electronically served, via File & Serve, the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, AM GENERAL LLC**, on all defendants' counsel of record in the above-captioned matter.

DATED:  May 9, 2019

Andrew S. Wainwright, Esq.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

---

RONALD MACNEIL,

                Plaintiff,

Civil Action
No.: 19-1261

v.

AM GENERAL LLC,

                Defendant.

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, AM GENERAL LLC

Plaintiff, by and through his counsel of record, and pursuant to the Massachusetts Rules of Civil Procedure and applicable Amended Pre-Trial Order, serves these Interrogatories to AM General LLC ("Defendant" or "AM General"), and requests that Defendant, by and through its counsel of record, respond to the following interrogatories within forty-five (45) days of receipt thereof.

## **INSTRUCTIONS**

1.    Should the Defendant assert a privilege with respect to any information, the Defendant is requested to provide the following as to each such document or item of information:

      (a)    The type of document or information (e.g., letter, notebook, telephone conversation, etc.),

      (b)    The date of the document or transaction involving the information;

      (c)    Identification of the author and/or all participants with respect to the information;

      (d)    Identification of the signatory or signatories of the document, if any;

(e)     Identification of the document's current custodian;

(f)     The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

(g)     A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

2.     If your answer states that the defendant is undertaking an investigation of the subject matter of the interrogatory, state when the investigation began, what steps comprise the investigation and what documents are being reviewed as part of the investigation.

## DEFINITIONS

As used in these Interrogatories the following terms mean:

1.     The terms "Defendant," "AM General," "you," "your," and "your company" all mean the corporate Defendant answering these Interrogatories, and any of its merged, consolidated, or acquired predecessors, divisions, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, and/or affiliates. This definition includes present and former officers, directors, agents, employees, and all other persons acting or purporting to act on behalf of the corporate Defendant or its predecessors, subsidiaries, and affiliates. "Predecessors" further means any business firm, whether or not incorporated, which had all or some of its assets purchased by you or came to be acquired by you whether by merger or consolidation. "Subsidiaries" further means any business firm, whether or not incorporated, which is or was in any way owned or controlled, in whole or in part by Defendant or its predecessors.

2.     The terms "document" or "documents" include any written, printed, recorded or graphic matter, photographic or video graphic matter or sound reproductions or computer input or output, including but not limited to: contracts, notes, rough drafts, interoffice memoranda, reports, research materials, logs, diaries, calendars, bank statements, tax invoices, diagrams, studies, manuals, minutes, by-laws, articles of incorporation, resolutions, shareholder endorsements, or partnership documents however produced or reproduced, that are: (i) now or were formerly in the possession, custody, or control of the Defendant (including documents at any time in the possession, custody or control of their subsidiaries, whether domestic or AM General, or merged or acquired predecessors) or, (ii) known or are believed to be responsive to these Interrogatories regardless of who now has or formerly had custody, possession or control.

2

3.    The words "person," "persons," individual," or "individuals" include natural persons, firms, partnerships, associations, joint ventures, corporations, and any other form of business organization or arrangement, and officers, directors, shareholders, employees, agents, and contractors of any business organization or arrangement.

4.    The words "meeting" or "meetings" may mean any coincidence or presence of any persons, whether or not such coincidence or presence was prearranged, was formal or informal, or was in connection with some other activity.

5.    The words "describe" or "description" when referring to a place, thing, or occurrence, mean to identify with sufficient particularity the place, thing, or occurrence so as to enable one to locate, examine and fully comprehend or understand the place, thing, or occurrence described.

6.    The terms "asbestos-containing products" and "asbestos products" mean any product, truck, vehicle, equipment, machinery, or mechanical item which contains or specifies the use of any asbestos-containing material in any form.  Such products and "equipment" include, but are not limited to, vehicles, brake shoes, brake lining, brake pads, brake assemblies, clutches, clutch facings, clutch assemblies, automotive friction material, and insulation materials.  The terms "asbestos," "asbestos materials" and "asbestos fiber(s)" refer to any and all materials, substance, or matter used or assembled or fabricated during the manufacture of a product, and that contains at least some asbestos fibers, including chrysotile, amosite, crocidolite, tremolite, actinolite, anthopholite, as an intended ingredient or contaminant.  "Product" and "equipment" include, but are not limited to, motorcycles, vehicles, jeeps, trucks, heavy equipment, brake linings, brake pads, clutch discs, brake and clutch linings, any replacement parts such as brake lining, brakes pads or clutch discs, and insulation materials.

7.    The terms "trade organization," and "trade association" mean any organizations or associations of business or industrial entities that are associated and/or meets for the purpose of achieving common goals and/or exchanging information related to common needs or interests, and/or learning information or facts of interest to the various members of the organization or association.

8.    The terms "facility" and "facilities" means a manufacturing or assembly facility where products are refined, converted, chemically altered, changed, assembled, manufactured, constructed, fabricated, or where component parts, materials, substances, or matter of such products are fabricated, assembled, or manufactured or are prepared for further fabrication or assembly.

9.    The term "equipment" refers vehicles, trucks, jeeps, heavy equipment, and/or any machinery or piece of equipment that calls for the use of asbestos and/or asbestos-containing products.  This definition specifically includes, but is not limited to the

M151 jeep, M34 and·M35 2 ½ ton truck, and the M54,  M809 and M939 5 ton
truck.

10.     The terms "manufacture" or "manufactured" mean to fabricate, construct,
        assemble, prepare for fabrication or assembly, or take any other action before
        completion of the product or material before the time of its shipment.

11.     The terms "research" and "research department" refer to efforts, whether
        scientific or otherwise, to develop new or different types of products, processes or
        designs of pre-existing products and is meant to incorporate all efforts that
        specifically contemplated the possible alteration of products.

12.     The terms "medical department" and "safety department" refer to an individual or
        a section or group of individuals working for the defendant, either directly or in a
        contractual capacity, whose purpose was or is to provide guidance, assistance, or
        advice concerning any aspects of medical health, including but not limited to, the
        safety of the defendant's workers and the safety of individuals using or exposed to
        asbestos products.

13.     The phrase, "industrial hygiene department" refers to an individual or group of
        individuals working for the defendant, either directly or indirectly, or in a
        contractual capacity, whose purpose was or is to provide guidance regarding the
        results of surveys, tests, interviews, or other procedures taken or effectuated for
        the purpose of determining the possibility or existence of detrimental health
        effects caused by exposure to asbestos. ·

14.     The term "health hazards" refers and relates to any injury, effect, damage,
        scarring, wound, impairment or disability of any part of the  human anatomy,
        including but not limited to the lungs and lung linings, that is caused by or
        associated with exposures to asbestos dust and fibers.

15.     The terms "test" and "testing" are used in their broadest sense including, but not
        limited to, studies of atmospheric dust samples, studies of the concentration of
        asbestos in such airborne test samples, studies of the lung conditions of workers
        (by x-ray or other means of medical surveillance), pulmonary function studies of
        workers, animal studies, pathological studies, industrial hygiene studies, risk
        assessment studies, cost-benefit analyses, and any other studies concerning health
        and safety.

16.     The term "identify," with respect to a document, means state the name or title of
        the document, the date of the document, the author of the document, the date the
        document was received by defendant and the current custodian of the document.

17.     The term "identify," with respect to a person, means state the person's full name,
        title, last known address, and phone number.

18. The words "<u>sales materials</u>" or "<u>written sales materials</u>" mean any and all documents or literature of a promotional nature that were created or printed for the purpose of assisting in the marketing or distribution of the products. Such documentation may include, but is not limited to, sales invoices, order slips, and other written indicia of orders received and sales made.

19. The term "<u>rebranding agreement</u>" means an agreement of any kind whereby one party to the agreement is provided products by the other party to the agreement and the agreement contemplates that the first party will place the brand name of its choice upon the products, either by repackaging or otherwise, and then proceed to sell, market, distribute and/or place the product in the stream of commerce, utilizing its new brand name.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Between 1960 and 1985, did this Defendant sell, supply, install, or deliver any asbestos containing equipment and/or products including, but not limited to, vehicles, jeeps, trucks heavy equipment, brake shoes, brake lining, brake pads, clutch facing, gaskets, friction material or other asbestos-containing products or equipment to:

      a) The United States Army
      b) The Army National Guard of the United States
      c) The Massachusetts Army National Guard

### INTERROGATORY NO. 2:

If the answer to Interrogatory No. 1 is in the affirmative, please state:

    a. The inclusive dates that each such equipment and/or product was sold, supplied, or delivered;

    b. The product name, brand name, model number, part number and type of any such product;

    c. A description of the asbestos content of any such product involved in any such transaction;

    d. Any identifying characteristic such as name plate, logo, tag, imprint, label on or in the equipment and/or product;

    e. The number of units of any such equipment and/or product that were supplied or sold to each of the following:

1. The United States Army
2. The Army National Guard of the United States
3. The Massachusetts Army National Guard

## INTERROGATORY NO. 3:

Did this Defendant create, publish, provide or submit to the U.S. Armed Forces any written material, specifications, diagrams or requirements for any technical manuals, maintenance manuals, characteristic sheets, specifications or other publications related to any of the equipment or products identified above?

## INTERROGATORY NO. 4:

If you placed warnings or cautionary language on the equipment, containers / packages of your asbestos products, or any written material submitted with or regarding any equipment or products that were distributed within the United States, DESCRIBE such warnings.

(For the purposes of this interrogatory, **"DESCRIBE"** shall mean to state when you first placed such warnings or cautionary language on that equipment, those products, or that written material; the verbatim content of such warnings or cautionary language; the inclusive dates of any such warning or cautionary language; and the reason(s) why such language was placed on the containers or packages.)

## INTERROGATORY NO. 5:

IDENTIFY each business entity from whom you have received finished asbestos products.

(For the purposes of this interrogatory, **"IDENTIFY"** shall mean to state the name and address of the supplier; the date(s); the amount; the types of finished products received, e.g., brake linings, clutch facings, brake assemblies that included brake linings, etc.; the use of the product, e.g., incorporated into new vehicles as original equipment, sold as original equipment replacement parts or sold as aftermarket replacement parts; the model(s) of any vehicles or equipment and the warning or cautionary labels that accompanied the shipment, including the date such warning or cautionary label first appeared.)

## INTERROGATORY NO. 6:

If you have ever warned, in any fashion, any person or entity that exposure to asbestos dust can cause cancer in humans, DESCRIBE such warnings.

(For the purposes of this interrogatory, **"DESCRIBE"** shall mean to state whether such warnings were oral or written, and the date(s) of each such warning, the person or entity

to whom such warning was given, and the date such warning was given, and the custodian of any documents evidencing such warnings.)

## INTERROGATORY NO. 7:

Describe any communication with the United States government, the U.S. Army, the Army National Guard of the United States, and/or the Massachusetts National Guard concerning the design, safe and effective operation, and safe and effective maintenance of the brake systems and clutch systems of any equipment sold or supplied to those entities from 1960 to 1985.

## INTERROGATORY NO. 8:

If the United States government or any branch of the military prohibited YOU from placing a warning or caution on any product, equipment, Technical Manual, or any other written material concerning the potential hazards associated with exposure to asbestos, fully describe the date(s), method, content and substance of any communication from the United States government or any branch of the military expressing such prohibition.

## INTERROGATORY NO. 9:

IDENTIFY each agreement into which YOU have entered with any company, PERSON, or business entity, either as a buyer or as a seller, to rebrand any ASBESTOS-CONTAINING EQUIPMENT, PRODUCTS and/or materials.

(As used in this interrogatory, the term **"IDENTIFY"** shall mean to state, for each agreement identified, the title and type of agreement the name of the company, PERSON, or business entity that manufactured the ASBESTOS-CONTAINING PRODUCTS under such agreement; the trade name affixed to such products; the period and duration of each agreement; the dollar volume of each agreement; the purchaser of the rebranded ASBESTOS-CONTAINING PRODUCTS).

## INTERROGATORY NO. 10:

If any asbestos products that you manufactured, produced, processed, sold, merchandized, supplied, distributed or otherwise placed in the stream of commerce have ever been tested by you, any co-defendant to this action, a governmental agency or any independent organization to determine the amount of asbestos fibers released during repair and/or installation, DESCRIBE each such test or study.

(For the purposes of this Interrogatory, **"DESCRIBE"** shall mean to state the date the test or study began, the date it ended, the procedure of the test or study, the location of the test or study, the individuals involved in the testing, and the results of such test or study.)

**INTERROGATORY NO. 11:**

IDENTIFY all studies of which YOU are aware concerning the effects of the inhalation of asbestos dust and/or fibers on persons who apply, remove, use, and/or work with or around any of the ASBESTOS-CONTAINING PRODUCTS designed, manufactured, sold, distributed, maintained, licensed, and/or relabeled for distribution by YOU, YOUR predecessors, subsidiaries, or affiliates.

(As used in this Interrogatory, the term **"IDENTIFY"** shall mean, with respect to each study of which YOU are aware, to provide the names and addresses of those persons that conducted such studies and provide the purpose or goal of such studies.)

**INTERROGATORY NO. 12:**

IDENTIFY those PERSONS, including but not limited to any agency of the United States government and any branch of the military, to whom the study summaries and reports identified in YOUR Response to Interrogatory No. 11 above were given.

(As used in this Interrogatory, **"IDENTIFY"** means to state the PERSON's name and job or title, the date of such dissemination and list any publication or other written dissemination of the results of such studies).

**INTERROGATORY NO. 13:**

IDENTIFY any studies to determine whether, and to what degree, the ASBESTOS-CONTAINING PRODUCTS that YOU, mined, manufactured, sold, marketed, installed, or distributed would be HAZARDOUS to humans before YOU placed such ASBESTOS-CONTAINING PRODUCTS into the steam of commerce or sold or supplied such products to the U.S. military

(As used in this Interrogatory, **"IDENTIFY"** means to provide the date, title, and conclusion of each study.  As used in these interrogatories, the terms, **"HAZARDOUS," "POTENTIAL HEALTH HAZARDS" OR "HEALTH HAZARDS,"** refer and relate to any injury, effect, damage, scarring, wound, impairment or disability of any part of the human anatomy, including but not limited to the lungs and lung linings, that is caused by or associated with exposures to asbestos dust and fibers.)

**INTERROGATORY NO. 14:**

Please identify each scientific and/or medical periodical or journal to which YOU, YOUR consulting physicians, and/or YOUR MEDICAL, research, industrial hygiene, product development, engineering and SAFETY DEPARTMENTS subscribed between 1930 and 1985.

(As used in this Interrogatory, the terms, **"MEDICAL DEPARTMENT"** and **"SAFETY DEPARTMENT,"** refer to an individual or a section or group of individuals working for the answering DEFENDANT, either directly or in a contractual capacity, whose purpose was or is to provide guidance, assistance, or advice concerning any aspects of medical health, including but not limited to, the safety of the DEFENDANT'S workers and the safety of individuals using or exposed to ASBESTOS-CONTAINING PRODUCTS.)

## INTERROGATORY NO.15:

IDENTIFY all inter-company, industrial, labor, or professional organizations or groups to which YOU or any of YOUR managers, officers, and/or directors belong, or have belonged, at any time since 1930. YOUR answer should include, but not be limited to, memberships in the Friction Materials Standards Institute; Brake Linings Manufacturing Association; Quebec Asbestos Mining Association; Asbestos Information Association; Industrial Health Foundation; Industrial Hygiene Foundation; Iron and Steel Institute; National Safety Council; Refractories Institute; American Society of Mechanical Engineers; Air Hygiene Foundation; and American Ceramics Society.

(As used in this Interrogatory, the term **"IDENTIFY"** shall mean to provide, for each such membership, the dates of membership, the requirements of membership and the amount of money YOU contributed annually as to each organization).

## INTERROGATORY NO. 16:

IDENTIFY each DOCUMENT in YOUR possession, custody, or control or about which YOU have knowledge that relates, refers, speculates, postulates, or pertains in any way to health hazards or problems associated with the use of ASBESTOS or ASBESTOS-CONTAINING PRODUCTS,

(As used hereinafter the terms **"DOCUMENT," "DOCUMENTS," "WRITTEN MATERIALS," or "PRINTED MATTERS"** include any written, printed, recorded or graphic matter, photographic or video graphic matter or sound reproductions or computer input or output, including but not limited to: contracts, notes, rough drafts, interoffice memoranda, reports, research materials, logs, diaries, calendars, bank statements, tax invoices, diagrams, studies, manuals, minutes, by-laws, articles of incorporation, resolutions, shareholder endorsements, or partnership documents however produced or reproduced, that: 1. are now or were formerly in the possession, custody, or control of the Defendant (including documents at any time in the possession, custody or control of their subsidiaries, whether domestic or AM General, or merged or acquired predecessors) or, 2. are known or are believed to be responsive to these Interrogatories, Request for Admissions and Requests for Production regardless of who now has or formerly had custody, possession or control)

(As used in this Interrogatory, the term **"IDENTIFY"** shall mean to provide the date, title, author and the identity of the custodian of each such document).

**INTERROGATORY NO. 17:**

If you have received any workmen's compensation claim for asbestosis, pulmonary fibrosis, mesothelioma or any other occupational disease or death caused by exposure to asbestos to any of your employees who were occupationally exposed to asbestos products by their using, handling, fabricating, installing, removing, mixing, cutting, packing or transporting products containing any percentage whatsoever of asbestos, whether manufactured by you or made by some other company, DESCRIBE such claim.

(For the purposes of this Interrogatory, **"DESCRIBE"** shall mean to state the date you received notice of the claim, the identity of the person making the claim, the specific disease or illness alleged, a brief summary of the documents submitted to support the claim, the present location (s) of the any documents concerning the claim, any index of claim files containing such claims, and the last known address of any attorney representing the Claimant, if any.)

**INTERROGATORY NO. 18:**

If you have ever promulgated any rules, written or oral, for the handling of asbestos products by your own employees, DESCRIBE such rules.

(For the purposes of this Interrogatory, **"DESCRIBE"** shall mean to state when they were promulgated, the substance of the rules, if oral, the name and title of the person who disseminated them, and, if in writing, the date, title, identification number, present location, and the name and address of the custodian thereof, or refer to an attached copy thereof.)

**INTERROGATORY NO. 19:**

If you were aware, at any time, that your asbestos friction materials were ground, beveled, shaped, sanded or otherwise subjected to manipulation that removed or released material from their surface by foreseeable end users of your products, DESCRIBE the purpose for which your asbestos friction materials would be so manipulated.

(For the purposes of this Interrogatory, **"DESCRIBE"** shall mean to state the date when you first became aware of these practices, how you became aware of these practices, whether you recommended any of these practices in your product literature, service manuals, or instruction booklets, the date(s) you recommended these practices, and describe in detail the recommended practice, or, in lieu thereof, attach a copy of any such literature, manual or instruction booklet that contains the recommendation.)

**INTERROGATORY NO. 20:**

If you contend that the contact of asbestos friction materials against either brake drums or flywheels does not produce any asbestos-containing dust, please EXPLAIN.

(For the purposes of this Interrogatory, **"EXPLAIN"** shall mean to state each and every fact which supports that contention, and the names and addresses of persons with any knowledge of supporting that contention.)

**INTERROGATORY NO. 21:**

For each affirmative defense asserted in YOUR Answer to Plaintiff's Complaint, state all facts upon which YOU base each such affirmative defense.

**INTERROGATORY NO. 22:**

For each affirmative defense asserted in YOUR answer to Plaintiffs' Complaint, identify each and every DOCUMENT that prove or support each such affirmative defense.

**INTERROGATORY NO. 23:**

IDENTIFY each witness YOU intend to call at trial.

(As used in this Interrogatory, the term **"IDENTIFY"** shall mean to state, for each such witness, their address, telephone number, and credentials or background, and expected area of testimony).

**INTERROGATORY NO. 24:**

For each witness identified in YOUR response to Interrogatory No. 23 above, identify the court, caption, date, counsel, and court reporter for each time each witness has been deposed or testified at trial, arbitration, or hearing on YOUR behalf and list each affidavit or sworn statement each witness has provided on YOUR behalf and provide a date(s) for deposition in this action of each witness so identified.

**INTERROGATORY NO. 25:**

If anyone has reviewed and/or organized your corporate and/or business records that relate to asbestos, EXPLAIN the current state of such records.

(For the purposes of this Interrogatory, **"EXPLAIN"** shall mean to state whether such documents have been bates-stamped or marked in any other way that distinguishes them from your other corporate records, whether they have been segregated from your other corporate records and, if so, the location of the documents and the name and address of the custodian of those records, whether any index, log or other type of similar device has been created to catalogue these records and, if so, the description of device and the name and address of any custodian of any such device.)

**INTERROGATORY NO. 26:**

IDENTIFY all PERSONS known to YOU to have knowledge of facts concerning
Plaintiff Ronald MacNeil's alleged exposure to ASBESTOS-CONTAINING
PRODUCTS manufactured, supplied, sold, provided, marketed, installed and/or
distributed by YOU.

(As used in this interrogatory, the term **"IDENTIFY"** shall mean to state the PERSON's
full name and last known address and telephone number and indicate whether they are
currently employed by YOU).

DATED:  May 9, 2019                                Respectfully submitted,
                                                   By plaintiff's attorneys,


                                                   Andrew S. Wainwright, Esq.
                                                   BBO #: 560060
                                                   **THORNTON LAW FIRM LLP**
                                                   One Lincoln St.
                                                   Boston, MA  02111
                                                   (617) 720-1333  FAX (617) 720-2445
                                                   awainwright@tenlaw.com


### CERTIFICATE OF SERVICE

I, Andrew S. Wainwright, Esq., hereby certify that on this day I electronically

served, via File & Serve, the foregoing **PLAINTIFF'S FIRST SET OF**

**INTERROGATORIES TO DEFENDANT, AM GENERAL LLC**, on defendant's

counsel of record in the above-captioned matter.


DATED:  May 9, 2019

                                                   Andrew S. Wainwright, Esq.